

**NUMBERS 13-16-00456-CR, 13-16-00457-CR, 13-16-00458-CR,
13-16-00459-CR, 13-16-00460-CR, AND 13-16-00461-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ANDREY CARDIEL MARTINEZ,**                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                     **Appellee.**

---

**On appeal from the 398th District Court
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Benavides
Memorandum Opinion by Justice Contreras**

In six separate indictments, appellant Andrey Cardiel Martinez was charged with a total of thirteen counts of burglary of a building, each a state jail felony. *See* TEX. PENAL CODE ANN. § 30.02(c)(1) (West, Westlaw through Ch. 49, 2017 R.S.). Martinez pleaded guilty and was convicted and sentenced to two years' confinement in state jail for nine of

those offenses, with several of the sentences ordered to run consecutively. Martinez brings six separate appeals, one corresponding to each trial court cause number, arguing that: (1) the trial court erred in ordering the sentences to run consecutively; (2) the State violated a plea agreement; (3) his guilty pleas were involuntary; and (4) his trial counsel provided ineffective assistance.

Because the trial court, prosecutors, and defense counsel each represented that Martinez's sentences could be legally cumulated in this case, and because these representations were incorrect under section 3.03 of the Texas Penal Code, we conclude that Martinez's pleas were involuntary and must be set aside. *See* TEX. PENAL CODE ANN. § 3.03 (West, Westlaw through Ch. 49, 2017 R.S.). Accordingly, we reverse and remand.

## I. BACKGROUND

Several McAllen businesses were burglarized on July 3, 2015, December 31, 2015, January 10, 2016, and February 2, 2016. Investigation revealed that, for each burglary, there was a single forced entry through the rear of a strip mall building, and the perpetrator then broke through sheetrock walls to gain access to the other stores in the building. The various business owners reported a total of over $21,000 in damages. Police identified Martinez as a suspect based on surveillance videos and shoeprint impressions, and he was arrested.

A Hidalgo County grand jury returned six indictments charging Martinez with a total of thirteen counts of burglary of a building, with one count pertaining to each business allegedly victimized. Specifically, Martinez was charged with five counts in trial court

2

cause number CR-1181-16-I[1]; one count in trial court cause number CR-1443-16-I[2]; two counts in trial court cause number CR-1444-16-I[3]; three counts in trial court cause number CR-1445-16-I[4]; one count in trial court cause number CR-1485-16-I[5]; and one count in trial court cause number CR-1486-16-I.[6]

At an arraignment hearing on May 12, 2016 before the Honorable Aida Salinas Flores, court-appointed defense counsel stated that he had been discussing a possible plea deal with the State. At another hearing on May 17, 2016, before the Honorable Manuel Banales, the prosecutor remarked that Martinez "has thirteen counts of burglary of a building" and "we were going to give him thirteen months to serve in the state jail facility and he was going to sign up, judge, and now, I think he changed his mind." After being admonished by the trial court, Martinez remarked: "I wanted to ask you if I could change attorney. . . . I feel like he's not helping me. I feel like he's attacking me more than helping me. He would—he tells me one thing. He tells my family another." The court denied Martinez's request to appoint another attorney but informed him that he could hire retained counsel if he was able to do so. The case was reset and another hearing was held on May 31, 2016. At this hearing, before the Honorable Romeo Flores, defense counsel asked for another week, stating that Martinez "may be seeking the services of another attorney." The case was reset again for June 16, 2016.

---

[1] Appellate cause number 13-16-00456-CR.

[2] Appellate cause number 13-16-00457-CR.

[3] Appellate cause number 13-16-00458-CR.

[4] Appellate cause number 13-16-00459-CR.

[5] Appellate cause number 13-16-00460-CR.

[6] Appellate cause number 13-16-00461-CR.

3

At the June 16, 2016 hearing, before the Honorable Fidencio Guerra Jr., the following colloquy occurred:

THE COURT: All right. What are you offering?

[Prosecutor]: We're offering 13 months—

THE COURT: Thirteen months?

[Prosecutor]: I actually—I mean we were at 18 months and we came down—

THE COURT: Do you know who I am, [defense counsel]?

[Defense counsel]: Yes, Your Honor. I've explained that to my client, Your Honor.

THE COURT: I don't like burglaries.

[Defense counsel]: Yes, Your Honor.

[Prosecutor]: A lot of damages.

THE COURT: You're going to get time. I would strongly suggest you take her 13 months. I'm serious because—

[Defense counsel]: If I could have an opportunity to talk to my client.

THE COURT: —I'm looking at—if it's 2 to 10, Jesus, how are you giving him 13 months.

[Defense counsel]: It was a state jail felony of a habitation—

THE COURT: A state jail?

[Prosecutor]: Burglaries—

[Defense counsel]: I'm sorry, of buildings, Your Honor.

THE COURT: All of them?

[Defense counsel]: Yes, Your Honor.

[Prosecutor]: Yes, but major businesses here in McAllen, Judge— not in Edinburg but in McAllen.

[Defense counsel]: If I could just—

4

THE COURT:          He's not going to get probation from me.  And I guarantee you he would be—if it's a sta[t]e jail he's going to be—

[Prosecutor]:        We want more, Judge, than the 13 months.  We were just being considerate.

[Defense counsel]:  If I could just have an opportunity—

THE COURT:          Talk to her and talk to him, you know, but—you know, I'm being fair with you.  I would accept—I'll follow her rec because it's not my thing but if you open it up to me, I'm going to max you.

[Defense counsel]:  Thank you, Your Honor.

THE COURT:          There is just too many—

[Defense counsel]:  Yes, Your Honor.

THE COURT:          —with the business crimes and stuff.  Go ahead and talk to him.

[Defense counsel]:  Thank you, Judge.

THE COURT:          I don't even know what the facts are.

(Recess.)

THE COURT:          Okay.  How many is he pleading to?

[Prosecutor]:        All of them.

                                        . . . .

THE COURT:          Okay.  All these five, right?

[Court coordinator]: There should be six, Judge.

THE COURT:          Six?

[Court coordinator]: Yes, Judge.

THE COURT:          Six?

[Prosecutor]:        Yes.

THE COURT:          Thirteen months on six never.  Two years ain't enough.

5

| | |
|---|---|
| [Defense counsel]: | It was 13—it was a total of 13 different counts, Your Honor, on five different indictments. |
| THE COURT: | Well, fine, but you tell him he's looking at—if it were to go to me two years on each one stacked. |
| [Defense counsel]: | I've explained that to him, Your Honor, and— |
| THE COURT: | Tell him he's better off coming back Tuesday— |
| [Defense counsel]: | Very well, Your Honor. |
| THE COURT: | —because there will be another Judge but the record will reflect that he's accepting the 13 months. |
| | Are you going to stick with the 13, [prosecutor]? |
| [Prosecutor]: | Yes, Judge, but there is tons of restitution. It's going to be thousands. I didn't offer the 13. My partner did but I respect that, Judge. |
| THE COURT: | All right. That's up to you all. Now, if you come back and change your mind, I don't have a problem with that. |
| [Prosecutor]: | Right, Judge. |
| THE COURT: | You know, if you want to keep that open, then it's open to Judge Salinas or it's open to the Auxiliary Judge. |
| [Defense counsel]: | Thank you, Your Honor. |

There was no mention made at this hearing of Martinez's earlier request for additional time to retain counsel.

The initial plea hearing took place on June 21, 2016 before the Honorable Bonner Dorsey. At the beginning of the hearing, the prosecutor noted that the State had offered a plea agreement whereby Martinez would plead guilty and the State would recommend thirteen-month sentences, with the sentences to run concurrently. Judge Dorsey indicated that, although he would accept such an agreement for one of the cause numbers, he would not accept the agreement as to the other cause numbers unless the

6

sentences were stacked. Defense counsel, after a discussion with Martinez, asked if the judge would accept a plea agreement under which Martinez would serve "maximum probation" following the jail term. The judge indicated that this proposal was not acceptable, and the case was reset again for July 7, 2016.

Finally, on July 7, 2016, before Judge Guerra, Martinez entered his pleas of guilty as to each cause number. Martinez stated that he had received copies of all six indictments and that he was satisfied with the advice and services of his counsel. The trial court admonished Martinez as to the punishment range applicable to state jail felonies. *See id.* § 12.35 (West, Westlaw through Ch. 49, 2017 R.S.). Martinez affirmed that he understood he was waiving his right to trial by jury and to confront witnesses. Defense counsel noted that, although the case was "originally scheduled for a plea bargain," Martinez would be giving an "open plea to the Court." Martinez affirmed that he understood the trial court could order the sentences to run concurrently or consecutively. He entered pleas of guilty to nine counts of burglary of a building.[7] The trial court accepted the pleas and adjudicated Martinez guilty on all nine counts.

The court then heard argument on punishment. The prosecutor noted that Martinez had previously been in state jail for "the same type of offense" and therefore, the offenses could be enhanced to third-degree felonies, but "[w]e chose not to do that" because "[w]e thought we were being reasonable." The prosecutor requested that the

---

[7] Martinez pleaded guilty to all of the counts charged except Counts II, III, IV, and V in trial court cause number CR-1181-16-I. The trial court stated that those counts would be unadjudicated, but it included restitution for those counts in its sentence under that cause number. *See* TEX. PENAL CODE ANN. § 12.45 (West, Westlaw through Ch. 49, 2017 R.S.) (providing that a defendant may, with consent of the State, admit to one or more unadjudicated offenses; that those offenses may be considered by the court in determining punishment; and that prosecution will then be barred for those offenses).

7

court impose the maximum penalty for a state jail felony—two years—for each cause number, with the sentences to run consecutively. The following colloquy then occurred:

[Defense counsel]: [W]e previously had been before Your Honor and there was an agreement previously of 13 months. We had discussed it. You had urged Mr. Martinez to take it.

However, due to the time circumstances, it was very close to lunch time, Your Honor, and there was a lot of paperwork to be signed and it hadn't been signed and so we rescheduled it from Thursday to Tuesday, from 6-16 to 6-21 pending the approval of the judge.

Unfortunately, we didn't have Your Honor before us. We had a different judge who did not accept our plea and therefore, we were scheduled to come back today. We tried to get him the, you know, the increased offer[] of the 24 months.

You know, of course, Mr. Martinez, is very adamant about paying the restitution, Your Honor.

THE COURT: Well, where are you coming at me with these 13 months deal?

[Prosecutor]: Judge, that is not the offer. This defendant, a long time ago, we offered him—

THE COURT: I mean, he looks familiar but I don't remember doing anything on it.

[Prosecutor]: Right. And it was before Your Honor and we ran out of time because there was so much paperwork. The next court setting we placed it in front of that judge and that judge refused to take 13 months. He didn't think it was enough time for all the burglaries. We withdrew that offer.

We've reissued a new offer which is—the other judge was going to stack on all of them, judge. We withdrew the recommendation. Today we offered him two years to run concurrent for a plea deal. He's being difficult. He doesn't want to—he's been difficult this entire time, judge. I think he deserves way more than two years.

THE COURT: How can you not accept two years?

8

[Defense counsel]: Judge, if I may just continue?  This was back on 6-16 when we were before you, Your Honor, and that's when we were going to take the 13 months.  There was no restitution or anything to that effect, Your Honor.  So he was going to take it but unfortunately and you said you would accept the State's offer 6-16.  Unfortunately—

THE COURT: I don't remember saying I was going to accept it—

[Prosecutor]: You didn't say you were going to accept it, Your Honor.

THE COURT: —not on a burglary of a building.

[Defense counsel]: Very well, Your Honor, that was my understanding, Your Honor, and that was my advi[c]e to Mr. Martinez.  Then we came back on 6-21 and unfortunately, we still had that 13 month offer.  Unfortunately, Judge Bonner did not accept that, Judge Dorsey, if I'm not mistaken.

Unfortunately, he did not accept that so we went back, try to negotiate something and we weren't able to, again, time constraints, and, of course, you know, we're here under, it's past noon already again.  So we're here July 7th, Your Honor.

And the reason we're doing an open plea, Your Honor, is because Mr. Martinez is really adamant that he wants, he feels the moral obligation to reimburse the victims for the restitution for the damages that [the prosecutor] had obviously mentioned.

I thinks there's about 25 or $30,000 worth of damage.  Certainly, the interest of society, the interest of the victims would be well served if Mr. Martinez were to get some time—some type of probation, Your Honor, so he can have an opportunity.

Maximum probation is what he's asked me to ask of you, Your Honor, so he can have an opportunity to reimburse and make the victims whole.  Of course, you know, we were asking for the 13 months in addition to probation, Your Honor.  I don't know if that's even possible.

Of course, we're respectfully asking that based on previous discussions and I know Your Honor is

9

mentioning that you don't remember and I understand that and if I was mistaken, I sincerely apologize.

But nonetheless, that's what we're asking for, Your Honor, if it's any, at all possible to have some consideration so Mr. Martinez can fulfill his obligation to pay back society and the victims.

The trial court denied Martinez's request for probation and pronounced sentences of two years' state jail on each of the nine burglary charges. The court summarized as follows:

THE COURT: . . . So he's been given two years state jail on every single count of burglary of a building. No fine in any of these cases. Full restitution in each one of these cases.

CR-1181-16-I, will run concurrent.

CR-1444-16-I, will run concurrent.

CR-1445-16-I, will run concurrent.

CR-1443-16-I, will be stacked.

CR-1485-16-I, will be stacked.

And CR-1486-16-I, will be stacked.

So from the way it looks to me, he's looking at eight years to do in a state jail prison facility. Basically, the ones that have multiple counts, those are all running concurrent. The ones on separate counts, they are the ones that are going to be stacked on top of the others.

So he's looking at, you all clear it up for me, you know, I'm stacking three which would be what? Six? And is that six on top of the two or is that six running with the other two? I got to know if he's going to do six years or he's going to do eight?

[Prosecutor]: That's up to you, judge.

[Prosecutor]: It depends on whether the Court were to stack—you're stacking those which would be six years.

10

THE COURT:        I'm stacking three of them—

[Prosecutor]:      Yes.

THE COURT:        —which is six years.  Now, am I stacking those on the two that are running concurrent?

[Prosecutor]:      That's completely up to the Court, judge.

THE COURT:        That's what I'm going to do.  He'll be doing eight years state jail.  Good luck to you, sir.

[Martinez]:        Thank you, Your Honor.

THE COURT:        Sorry about that.  You picked the wrong judge.

Written judgments were signed by the Honorable Jaime Garza on July 11, 2016. In Count I of cause number CR-1181-16-I, Martinez was sentenced to two years in state jail, with the sentence to run consecutive to the sentences imposed in cause numbers CR-1486-16-1, CR-1485-16-1 and CR-1443-16-1, and concurrent with those imposed in cause numbers CR-1444-16-1 and CR-1445-16-1.  In cause number CR-1443-16-I, he was sentenced to two years in state jail, with the sentence to run consecutive to those imposed in cause numbers CR-1181-16-1, CR-1485-16-1 and CR-1486-16-1.  In Count I of cause number CR-1444-16-1, he was sentenced to two years in state jail, with the sentence to run concurrent with those imposed in cause numbers CR-1445-16-1, CR-1181-16-1, CR-1486-16-1, CR-1485-16-1, and CR-1443-16-1.  In Count II of cause number CR-1444-16-1, Martinez was sentenced to two years in state jail with the sentence to "run concurrent unless otherwise specified."  In Count I of cause number CR-1445-16-I, Martinez was sentenced to two years in state jail, with the sentence to run concurrent with those imposed in cause numbers CR-1444-16-I, CR-1181-16-1, CR-1486-16-I, CR-1485-16-I, and CR-1443-16-I.  In Count II of cause number CR-1445-16-

11

I, he was sentenced to two years in state jail with the sentence to "run concurrent unless otherwise specified." In Count III of cause number 1445-16-I, he was sentenced to two years in state jail with the sentence to "run concurrent unless otherwise specified." In cause number CR-1485-16-I, he was sentenced to two years in state jail, with the sentence to run consecutive to those imposed in cause numbers CR-1443-16-1, CR-1181-16-1 and CR-1486-16-1. Finally, in cause number CR-1486-16-I, Martinez was sentenced to two years in state jail, with the sentence to run consecutive to those imposed in cause numbers CR-1443-16-1, CR-1181-16-1 and CR-1485-16-1. Together, the judgments ordered Martinez to pay $22,029.61 in restitution.

This appeal followed.

## II. DISCUSSION

### A. Breach of Plea Agreement

We first address Martinez's three issues contending that the State breached an agreement to recommend a sentence of thirteen months in exchange for Martinez's guilty pleas. Martinez asserts that the State had a "duty" to "recommend the agreement that had been reached" but that the prosecutor "breached that agreement by making comments suggesting she disapproved of the recommendation" and then by making a different recommendation.

Plea agreements are generally considered contractual arrangements between the State and a defendant, but the contractual nature of such an agreement "does not become binding" until the agreement is approved by the trial court. *State v. Moore*, 240 S.W.3d 248, 251 (Tex. Crim. App. 2007). If the court accepts the agreement, the State may not then withdraw its offer. *See Bitterman v. State*, 180 S.W.3d 139, 142 (Tex. Crim. App.

12

2005) (noting that "a plea agreement is binding upon all parties once the trial judge has accepted it," and "if the prosecution does not perform its responsibilities under the agreement, the plea bargain is considered involuntary"). On the other hand, if the trial court rejects the plea agreement, the defendant must be permitted to withdraw his plea, and the State may withdraw its offer. TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(2) (West, Westlaw through Ch. 49, 2017 R.S.); *Moore v. State*, 295 S.W.3d 329, 332 (Tex. Crim. App. 2009).

The record of the trial court proceedings in this case is convoluted, with eight hearings before five different presiding judges and several different prosecutors. Nevertheless, we can locate no point in any of these hearings at which any of the judges unequivocally accepted or approved of any plea agreement calling for the State to recommend a thirteen-month sentence. At the hearing on May 17, 2016, the prosecutor remarked that the State was offering thirteen months but that Martinez did not want to accept the offer, and Martinez asked for more time to retain new counsel. At the June 16, 2016 hearing, the prosecutor again stated that the State was offering thirteen months, and Judge Guerra at one point stated: "I would accept—I'll follow her rec because it's not my thing but if you open it up to me, I'm going to max you."[8] However, after Martinez met with his counsel, the judge remarked that thirteen months would "never" be "enough" for

---

[8] We note that, although Texas trial judges "are not expressly prohibited by statute or any rule of law from participating in a plea bargaining session," the Texas Court of Criminal Appeals has suggested that "a trial judge should not participate in any plea bargain agreement discussions until an agreement has been reached between the prosecutor and the defendant." *Perkins v. Third Court of Appeals*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987) (citing *Ex parte Williams*, 704 S.W.2d 773, 777, n.6 (Tex. Crim. App. 1986)). "The reason for this suggestion is that the trial judge should always avoid the appearance of any judicial coercion or prejudgment of the defendant since such influence might affect the voluntariness of the defendant's plea." *Id.* (citing *State ex rel. Bryan v. McDonald*, 662 S.W.2d 5, 9 (Tex. Crim. App. 1983); *Ex parte Shuflin*, 528 S.W.2d 610, 615–17 (Tex. Crim. App. 1975); *Kincaid v. State*, 500 S.W.2d 487, 490–91 (Tex. Crim. App. 1973)).

thirteen counts. The judge later remarked that "the record will reflect that he's accepting the 13 months," thereby indicating that the parties had reached an agreement, but there is no indication that the judge approved of that agreement at that time. At the next hearing on June 21, 2016, Judge Dorsey clearly indicated that he would not accept an agreement for thirteen months unless the sentences were stacked. Finally, at the July 7, 2016 plea hearing, Martinez acknowledged that he was giving open pleas of guilty, that the State was not making a sentencing recommendation, and that the applicable punishment range allowed for sentences of up to two years in state jail. During argument on punishment, the prosecutor indicated that she was no longer offering a recommendation of thirteen months.

Even if we assume that a plea agreement was reached at some point between Martinez and the State, the State was free to withdraw its offer because no judge ever accepted or approved of that agreement. *See Moore*, 295 S.W.3d at 332. We overrule Martinez's issues alleging that the State breached a plea agreement.

## B. Cumulation of Sentences and Voluntariness of Pleas

Martinez raises several issues on appeal concerning the trial court's decision to order some of his sentences to be served consecutively. By his first issue,[9] Martinez contends that this decision was improper under section 3.03 of the Texas Penal Code because the offenses were all committed as part of the "same criminal episode" and were prosecuted in a "single criminal action." *See* TEX. PENAL CODE ANN. § 3.03. By three additional issues, Martinez argues that his guilty pleas were involuntary because his trial

---

[9] Martinez raises this issue only in appellate cause numbers 13-16-00456-CR, 13-16-00457-CR, and 13-16-00460-CR.

14

counsel "failed to advise [him] and/or the Court that the trial court could not sentence him to consecutive sentences."[10]

Generally, the decision of whether multiple sentences will run consecutively or concurrently is left to the trial court's discretion. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West, Westlaw through Ch. 49, 2017 R.S.); *Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008); *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006). However, section 3.03 of the Texas Penal Code provides that, with certain exceptions not applicable here, sentences must run concurrently "[w]hen the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action." TEX. PENAL CODE ANN. § 3.03. "Criminal episode" means:

> the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> (1)  the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
>
> (2)  the offenses are the repeated commission of the same or similar offenses.

*Id.* § 3.01 (West, Westlaw through Ch. 49, 2017 R.S.). The Texas Court of Criminal Appeals has held that a defendant is prosecuted in "a single criminal action" whenever "allegations and evidence of more than one offense arising out of the same criminal episode, as that term is defined in Chapter 3, are presented in a single trial or plea

---

[10] Martinez also contends that his plea was involuntary because his trial counsel "assured [him] that he would receive thirteen months if he pled open to the court." The record, however, establishes that Martinez entered open pleas of guilty after being admonished of the punishment range applicable to a state jail felony and without any punishment recommendation made by the State. Martinez stated affirmatively at the plea hearing that he was not promised anything in return for his guilty pleas. He directs us to no point in the record indicating that he was assured, by his counsel or by anyone else, that he would receive a thirteen-month sentence if he pleaded guilty.

15

proceeding, whether pursuant to one charging instrument or several." *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992).

Martinez argues that the nine offenses to which he pleaded guilty, though committed over the course of eight months in 2015 and 2016, constitute a "single criminal episode" under the very broad statutory definition. He further argues that, because all nine guilty pleas were heard at the same proceeding, they are part of a "single criminal action" and therefore the trial court was not permitted to stack the sentences.[11]

The State concedes the point and acknowledges that Martinez's offenses were each committed as part of the "same criminal episode" and were prosecuted in a "single criminal action." The State asks us to modify the judgments to delete the provisions ordering the sentences to be served consecutively. *See Jackson v. State*, 157 S.W.3d 514, 515–16 (Tex. App.—Texarkana 2005, no pet.) (modifying judgment to delete improper cumulation order); *Guidry v. State*, 909 S.W.2d 584, 585 (Tex. App.—Corpus Christi 1995, pet. ref'd) (same). However, the situation in this case is more complicated. Throughout the various hearings in the trial court, all parties, including the trial court judges, appeared to be under the false impression that the stacking of sentences would be within the trial court's discretion, whether or not there was a plea agreement. Martinez's pleas of guilty were given with this potential outcome in mind. Moreover, crucially, Martinez's decision to plead guilty was taken while he was under the false impression that, were he to plead not guilty and be convicted at trial, cumulation of

---

[11] Though Martinez's trial counsel did not object to the stacking order, he was under no obligation to do so in order to preserve the issue for appellate review. *See Mizell v. State*, 119 S.W.3d 804, 806 n.6, n.7 (Tex. Crim. App. 2003) (noting that sentences not authorized by law are void and illegal, and unlike most trial errors which are forfeited if not timely asserted, a party is not required to make a contemporaneous objection to the imposition of an illegal sentence).

16

sentences would be a lawful option for the trial court.

To be statutorily and constitutionally valid, a guilty plea must be free and voluntary. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (West, Westlaw through Ch. 49, 2017 R.S.) ("No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary."); *Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'"). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Brady*, 397 U.S. 742, 748 (1970). An involuntary guilty plea must be set aside. *Fimberg v. State*, 922 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (citing *Boykin v. Alabama*, 395 U.S. 238, 244 (1969); *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975)).

An accused who attests that he understands the nature of his plea when entering a plea of guilty and that it is voluntary, as in this case, has a heavy burden on appeal to show that his plea was involuntary. *See Fielding v. State*, 266 S.W.3d 627, 636 (Tex. App.—El Paso 2008, pet. ref'd); *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.— Houston [1st Dist.] 1996, pet. ref'd). But a plea based on erroneous information conveyed to the defendant is involuntary. *See Ex parte Barnaby*, 475 S.W.3d 316, 322 n.8 (Tex. Crim. App. 2015) (per curiam) (citing *Padilla v. Kentucky*, 559 U.S. 356 (2010) (holding plea to be involuntary where counsel failed to advise the defendant about immigration consequences); *Ex parte Moussazadeh*, 361 S.W.3d 684 (Tex. Crim. App. 2012) (same where defense counsel misinformed appellant regarding parole eligibility); *Ex parte*

*Griffin*, 679 S.W.2d 15, 18 (Tex. Crim. App. 1984) (same where defense counsel erroneously told the defendant that his plea agreement included the disposition of an earlier criminal case)).  The Texas Court of Criminal Appeals has recently stated:

> Misrepresentations that may cause a plea to be involuntary can come from a variety of sources.  While many claims allege erroneous advice or misinformation by defense counsel, misrepresentations can also come from the trial court, or the state.  Misrepresentation can be even more fundamental:  a plea would be involuntary if a defendant is in total ignorance of the precise nature of the charge and the range of punishment it carries.  Such a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.  Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this sense.

*Id.* at 322 (footnotes and internal quotations omitted).

The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it."  *Id.* (citing *Brady*, 397 U.S. at 749).  In considering the voluntariness of a guilty plea, the record should be examined as a whole.  *Id.* (citing *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998)).

Considering the entire record and all the relevant circumstances, we find that Martinez's pleas were involuntary because they were based, at least in part, on the misconception that the trial court could validly order his sentences to run consecutively.  *See Moussazadeh*, 361 S.W.3d at 691 ("When deciding whether to accept or reject a plea offer, a defendant will likely consider the actual minimum amount of time he will spend incarcerated.").  We therefore sustain Martinez's issues asserting that his pleas were involuntarily given and we set aside those pleas.  See TEX. CODE CRIM. PROC. ANN. art. 26.13; *Bousley*, 523 U.S. at 618.[12]

---

[12] Martinez also raises four issues arguing that his trial counsel provided ineffective assistance.  In light of our conclusion that the guilty pleas must be vacated, we need not address these issues because,

18

### III. CONCLUSION

We reverse the trial court's judgments and remand for further proceedings consistent with this opinion.

DORI CONTRERAS
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of July, 2017.

---

even if sustained, they would not afford Martinez any greater relief. *See* TEX. R. APP. P. 47.1; *Gonzalez Soto v. State*, 267 S.W.3d 327, 334 n.29 (Tex. App.—Corpus Christi 2008, no pet.).